## J. W. TAYLOR ET AL *v.* W. T. FIGG ET AL.

**Rent of Part of an Estate Leased to Highest Bidder.**

> Where the rent of an estate is made by public sale to the highest bidder, the distributees cannot be heard to complain of a discrepancy of amount, they being present and not filing an objection or exceptions thereto.

APPEAL FROM SHELBY CIRCUIT COURT.

January 22, 1870.

OPINION OF THE COURT BY JUDGE WILLIAMS:

The only controversy is as to the responsibility of J. W. Taylor

for the rents of lands descended from his deceased father to himself, brothers and sisters.

He and Bushrod Taylor administered on the estate of their deceased father, and the heirs, by writing, authorized them to rent out the land, which they did on the day of sale. The farm consisted of the home place as originally owned and three additional contiguous tracts added by purchase. The home place originally consisted of 200 acres, but all consisted of something less than 600 acres. The land was put up at public out-cry, the heirs, or nearly all of them, being present.

The two Graves rented two parcels and J. W. Taylor bid $400 for the home place, and it was struck off to him, which he afterwards reported in his fiducial account and paid at different times sums of money on this account. They now insist he only rented the home place as it originally stood, of 200 acres, whilst he actually enjoyed over three hundred acres, therefore, they seek to recover of him its value.

The evidence is apparently somewhat conflicting, but when thoroughly analized we think it is not really so. Some of the witnesses understood the home place, as described at this public renting, to contain only 200 acres, whilst others understood it to contain more and that there would be 200 acres of corn and seed land and some thirty to forty acres of grass land, and then there was a large unenclosed wood.

Some of the witnesses are very positive that the farm was divided into three parcels to rent out, and the Graves rented two and got their parcels, whilst J. W. Taylor rented the other, and that this included all the farm, and the irrecollection is greatly fortified by the conduct of the heirs, for being present had not all the farm been rented, they would certainly have inquired into it and had the remainder rented. They knew on the day of renting that only three parcels had been rented, and they then made no complaint, which they very naturally would have done had they not understood all the land was rented.

It being proclaimed that there would be about two hundred acres of corn and small grain land and might well produce the impression on persons in the crowd that only two hundred acres were rented as the home place, especially among those not closely observing, as some appear to have been, because they say something was said as to 200 acres, hence their impression that this was the quantity rented.

As many, if not all, the heirs were present and the renting public, and made at their instance and with their knowledge, there was no actual fraud in J. W. Taylor's renting. As he reported the renting with his fiducial accounts, a part of which accounts some of the heirs afterwards uncomplainingly received, and as no objections were made on the day of renting by those present we cannot determine that there was implied or presumed fraud, hence the whole case depends on the isolated fact whether or not he rented two hundred acres or more.

Regarding all the evidence as strictly pure and as but a mere conflict of recollection, and taking into consideration all the circumstances and the conduct of the parties at the time of the renting, we can scarcely doubt that the whole farm was rented in three parcels and that J. W. Taylor the largest and the Graves the other two.

Wherefore, the judgment as to J. W. Taylor is reversed, with directions to dismiss appellee's petition as to any claim for the use and occupation of rent of land for the year 1867, over and above four hundred dollars.

*Caldwell,* for appellants.

*Bullock & Davis,* for appellees.